Thank you. Lamar Peckham for petitioner in this case. Federico Ringo Carino. I have just two basic points to make in this case in addition to what has already been submitted in our brief. The first is the issue of credibility as it relates both to the asylum claim and the evidence about continuous physical presence. First, I think the unassailable fact is that the immigration judge granted voluntary departure in this case and that that was based upon evidence of good moral character and the judge accepting that that was true. That's, of course, an issue that this court doesn't have jurisdiction to consider. So it's an established fact in the record then that this is a person of good moral character. However, at the same time, the immigration judge and the Board of Immigration Appeals, because it just issued an affirmation without opinion, they made a determination that his claim for political asylum was a false claim, which would obviously be based on a belief that he lacked credibility in his testimony. And I think that the grant of voluntary departure and then a finding of a false claim of political asylum are just fatally inconsistent with one another. And that because of the voluntary departure grant is really not before this court except as a judicial fact, that the credibility or lack of credibility finding just is not something that can be sustained. And that because of that, the political asylum claim really needs to be addressed on its merits rather than on the credibility of the petitioner. And I believe in this case it wasn't really addressed on its merits. The judge merely dismissed it as a false claim without specifically stating which parts were false and which weren't and didn't really make a finding that if the facts had been established as they were presented, that there would be no, it wouldn't suffice for a political asylum grant. Now, if we go with you on that line of reasoning and hold that there has been no effective adverse credibility finding, which is essentially what you're asking us to do, does that mean we have to do a Ventura remand? I think so, yes. I would agree with the court that that's probably what has to happen. But what if we were to conclude looking at the testimony in as favorable a way to your client as we could, we nonetheless would sustain an IJ saying, you know, there's not enough here. Do we have to wait for the IJ to do that before we say anything about that question? I don't think it would be necessary. I think this court has sufficient evidence and jurisdiction to make that determination without sending it back necessarily to the immigration judge. But I think it's kind of on the line, could go either way. I think the court could either decide that the evidence was sufficient for it to make a determination on its own or send it back to the immigration judge. My problem is, I'm afraid, with Ventura that if we find that there's, if we have to set what the IJ said about this being a false claim and say that this was not a sufficiently explicit or sustainable adverse credibility finding, Ventura sounds to me as though we'd have to send it back to see what the IJ thinks on the merits of the asylum claim. Although at that point he may say, well, you know what, on that voluntary departure, I didn't mean it. Well, that question may or may not be open on a remand. I guess it depends on the specifics of the remand. Yeah, okay. Well, now, you had, you know, part of the adverse credibility finding had to do with the asylum officer's statement, correct? Right. And under Hernandez-Guardama, the standard there is whether the evidence was probative, whether the admission was fundamentally unfair. And what's your best argument that the evidence of the asylum officer's notes is inadmissible under that standard? Well, I don't think that the notes necessarily were inadmissible, but they weren't offered into evidence. There was a statement made about what was in them, but that wasn't. Weren't they read into the record? I don't believe they were. Or if they were, there was no, you know, I don't recall if they were offered into evidence, marked into evidence, and received into evidence. And if the immigration judge actually said, I don't need to see those notes, just tell me if it says such and such. May I continue? Thank you. And then the second point under the credibility finding is the physical presence, the continuous physical presence, which is also a case in which the problem was whether, really, whether the petitioner was to be believed in his testimony, because he did testify that he entered the United States at least ten years before the notice to appear was issued. It was somewhat vague on the actual date of that, and the other witnesses that he had were somewhat vague, too. But still, that kind of evidence, that kind of evidentiary or testimonial evidence is sufficient as long as the witness is to be believed, and there's no negative credibility finding. And I'd say the same thing. In this case, there's no negative credibility finding that would cause the court to determine that his testimony about their continuous physical presence was untrue or insufficient. Okay. I've got the following. I don't know what to call it. It's almost like a logical problem. Because we have a, this is a streamlining case, and all we have is a BIA affirmance without any indication as to why. Well, we have from the IJ, assuming that removability is proper and we get to the question of cancellation of removal, the IJ gives two reasons, one of which is revealable by us and the other one of which is not. That is to say, number one, he says, I don't find that the ten-year period was established, and number two, even if the ten-year period were established, I don't find that there's sufficient hardship. The hardship question is unrevealable by us. So what do we do? Well, that's my last point. Can we even reach, then, the question of ten years? That's my last point, Your Honor, and that is that as the immigration judge said at the time of the hearing, she had nothing from the Board of Immigration Appeals in the way of a precedent on which to make her determination. Therefore, there isn't any comparison of facts to the standard as established by the Board of Immigration Appeals because at that moment there wasn't any precedent from the Board of Immigration Appeals. When the case went to the Board of Immigration Appeals, the Board had established through Monreal and DiZola and Racines, at least Monreal and DiZola had established a standard but said nothing about it. Yeah, no, I've got a different point. I'm speaking only for myself. I don't see any difficulty with the IJ deciding that sufficient hardship hadn't been made out. Under the circumstances, the BIA hadn't established the precedent, but what's she supposed to do? I mean, she's supposed to decide something, which she does. My problem is different. We've got two grounds upon which the refusal to allow cancellation or removal are premised, one of which is reviewable and the other which is not. Do we say, listen, we agree with or disagree with whatever we're going to do as to the 10-year. What if we were to say, well, we agree with the 10-year period finding of the IJ or we disagree, do we then send it back to the, let's say we disagree and we say the 10-year period has been established, do we then send it back again on that ground to see whether the BIA wants to affirm based upon the hardship ground? Well, since in this case it was an affirmance without opinion and the Board of Immigration Appeals really wasn't apparently even looking at its own precedence, I'd say yes. Okay. Do we have to? Do you have to? No, I don't think it's mandated by the law. I think we have your argument in hand. Let's hear from the government and then you've got some time for rebuttal. Thank you. May it please the Court, my name is Ernesto Molina with the Office of Immigration Litigation, U.S. Department of Justice, and I represent the respondent, Alberto Gonzalez, in this case. Can you pick up where Appellant's Counsel left off and discuss whether we're required to remand for clarifications under LANSA? Yes, Your Honor. The answer that I'll ultimately give the Court is no, the Court's not required to, and I'll explain why. In the LANSA case, this Court addressed a Board decision. Actually, I shouldn't say Board. Well, it was a Board summary affirmance of an immigration judge's decision that involved a hardship finding, which is discretionary, and I believe there it was the term of physical presence, which is not a discretionary finding. This Court held that, well, since it can review one but not the other and it doesn't know on which ground the Board affirmed, it must remand to the Board of Immigration Appeals for clarification. That finding has actually no application where the Court has jurisdiction over both issues that are presented by the petitioner in this case. In other words, this Court certainly has jurisdiction over the continuous physical presence question and the substantial events test there. Now, when we look to the hardship question, we see that in this case, which was briefed before LANSA, petitioners raise only the question of whether or not the immigration judge applied the correct legal standard. Well, that, this Court has held in Romero-Torres, is within the Court's jurisdiction. Now, His Honor Judge Fletcher commented that it seems reasonable that for an immigration judge who does not yet have a binding Board precedent or circuit precedent to make the statutory finding on his or her own, and that's what this immigration judge did. So with respect to the only issue regarding hardship that's presented by this case, which was briefed even before LANSA, this Court has jurisdiction. Therefore, this Court has jurisdiction over both questions, the questions of continuous physical presence and the legal question regarding whether or not the immigration judge applied the correct standard for hardship. And what if I disagree with you as to we have jurisdiction on the hardship question? If the Court disagrees with the government on that respect, then the Court needs to remand under LANSA. Is that really true? What if we agree with the IJ that the 10-year period wasn't made out? Can't we simply affirm on that ground and be done with it? You're actually correct, Your Honor, that the Court can affirm on that ground, and that's enough. And I'll explain why. The Court's decision in … The remand would be required only if we disagree on the 10-year continuous presence? That is correct. And the reason for that is this Court's decision in LANSA is based on SEC v. Chenery. Now, in SEC v. Chenery, the Supreme Court said this Court can only review an agency decision for the grounds asserted in the agency decision. Now, in this particular case, there is one exception to the SEC v. Chenery standard, and that's for essentially a harmless error. And if this Court were to find that that immigration judge's decision is pretty sound, then the Board's summary affirmance becomes something akin to harmless error. That is, under the Board's regulations, it wants the immigration judge's decision to be final. It wants that to be the subject of judicial review. Therefore, this Court would simply turn to the immigration judge's decision and review both of those grounds. Now, even as I describe that, that's a little … there's a lot of legal maneuvering in there, but it's not without merit. You know, in this particular circumstance, we have … If I may turn real briefly to the question of good moral character, we have an alien who has no documentation before 1988, February 1988 being the last piece of evidence. Now, that piece of evidence, which is his California ID, is actually very key because Mr. Carreno testified that when he arrived in the United States, the first place he lived for a few days before moving to, I think it was a west side address, was on a Bodega Road or Bodaga Road. Coincidentally, his California ID, dated February 1988, is for that address. Now, he testifies that he was only at that address for a couple of days. Therefore, the immigration judge is entitled to say, well, if he was only there for a couple of days and he used that for his California ID in February 1988, then that's enough evidence to show that his arrival is actually in 1988 and not 1987. Therefore, there would be substantial evidence to support the immigration judge's decision. So, bringing us back from that analysis all the way back to Your Honor's question, the answer is yes, if there's a clear error, you know, then, well, I shouldn't say clear. If the error was harmless, I should say, then this court can simply affirm based on the immigration judge's continuous physical presence finding. That's consistent with the goal. Mr. Molino, the IJ seems to me is pretty clear, made his decision on hardship on the merits, right? Yes. He said they didn't meet the exceptional and extremely unusual hardship requirement. Now, that issue is not before us for review? The issue – Even though that was the basis of the IJ's decision? Well, actually, Your Honor, that is one of the issues that is before the court. Now, I should express – You say it is before the court? It is before the court. The question is whether the court has jurisdiction to review it. Right. So, if it is before the court, and you say we do or don't have jurisdiction to review it? This court does not have jurisdiction to review the actual discretionary finding. This court does have jurisdiction to entertain the only question raised by petitioners, which is whether or not the judge applied the correct legal standard. But my question is this. Assuming – let's assume hypothetically that on that latter question we decided in your favor. In other words, that in effect there is no constitutional infirmity with the way the IJ went about making that decision, right? Correct. Then, isn't the decision of whether or not that decision was correct on the merits still being challenged? No. No? Not correct with regard to the hardship finding. What petitioners really press in their brief is the question of whether or not the immigration judge abused his discretion by failing to cite the board precedent, which, of course, didn't exist at the time, whether he or she applied the correct standard, which, of course, this court just analyzed. So this court would, in addressing even those two questions, dispose of the only claim regarding hardship that's presently before the court. Can you cite a case that sort of distinguishes this situation from the Landa situation? Is there any case that discusses that? No, Your Honor. There's no case exactly on point with regard to what I'm telling the court. There was a case this court decided in March of 2005, and, unfortunately, its name just escapes me. It's the only case I'm aware of so far that sort of limited Lanza, and that was a slightly different circumstance where there was an asylum case at issue in which there was a credibility finding, and the court couldn't review the asylum finding for I forget what reason, but the court said, well, since we still can review withholding and the credibility issue is presented there, if we dispose of it in the withholding question, that would dispose of it for asylum. Therefore, we're out of the Lanza problem. Now, you know, it's a similar circumstance here where, well, the only issue that's really presented is the legal issue. This court certainly has jurisdiction over that. Therefore, that provides a similar circumstance limiting Lanza. Could you clarify for me, counsel, for the appellant said about the asylum officer's notes? Yes, Your Honor. Whether they're in evidence or not? They are not directly in evidence, Your Honor. That is, if you turn to any page of the record, it's not there and it's not expressly read in. The way it was brought in, Your Honor, were questions put by the immigration judge to government counsel in the case, asking whether the asylum officer's notes indicated that Mr. Carreno had claimed that he was beaten. The then INS officer said yes, that that was evidence, and the judge said, well, okay, that's fine. But I think where the court really needs to start for that analysis, to fully understand what's going on there, is what the immigration did immediately before getting to that issue. In the record, the immigration judge produced an affidavit written in Spanish and signed by Mr. Carreno. It was prepared with his attorney. He signed it as true, and when he was before the immigration judge, he recognized it and signed it as true. It was in that statement that he claimed to have been beaten, and it was off that claim, which was, again, not mentioned in his direct testimony before the immigration judge, that caused the immigration judge's issues. Now, the immigration judge went to the asylum officer's notes, or asked about the notes, just to see whether that got into the claim or whether there was any clarification, and there was not. Do you agree that that issue is exhausted? Oh, no, Your Honor. If you go to the petitioner's brief before the board, there's no mention of that whatsoever, and for that reason, the claim is not exhausted. Similarly, I should point out, as is the failure to challenge, well, I shouldn't say that. I'll hold off right there, Your Honor. That that claim regarding the bringing in of those notes, whether they were fully in evidence, whether they were used at all, it was neither objected to nor argued before the Board of Immigration Appeals. Therefore, there is no jurisdiction over that particular claim. And again, even contextually, because it was the written statement that was the start of all the problems, any error by looking to the immigration judge's or the asylum officer's notes are essentially harmless because there's still that credibility finding. Now, I see I'm running out of time, or am I now accumulating time? You're in deficit. I'm sorry. Then I'll be quite short, Your Honor. In this case, the court should affirm the immigration judge's decision because the continuous fiscal period decision is supported by substantial evidence, and the immigration judge applied the correct legal standard regarding hardship. Thank you. Thank you, Your Honor. Mr. Peckham? I'd just be happy to answer any questions the Court might have. Well, you agree that you are not challenging the hardship determination on the merits? Yes, I do agree. All right. Okay. Thank you. Thank you very much. Thank both sides for your helpful argument. There's some tricky little questions in this case.
judges: Tashima, W.fletcher, Callahan